## Imperial Jellico Coal Company v. Neff.

(Decided November 16, 1915.)

### Appeal from Whitley Circuit Court.

1. Pleading—Corporations—Effect of Inaccurately Describing Name of in Suit Against—Amended Petition—Limitation.—A plaintiff brought suit against the "Imperial Coal Co." to recover damages for personal injuries. More than a year after the action accrued the plaintiff filed an amended petition setting up that his injuries were caused by the negligence of the Imperial Jellico Coal Co., but by mistake he had omitted the word "Jellico" from the name of the defendant. On this amended petition a summons issued and was executed on the Imperial Jellico Coal Company. Held, that the error in the name was not a substantial one and that the action against the Imperial Jellico Coal Co. was not barred by the statute, as the amendment related back to the filing of the original petition.

2. Pleading—Name—Error in—Correction.—Section 134 of the Code authorizes the correction by amendment of a mistake in the name of a party, and when the correction of such a mistake does not affect the substantial rights of the adverse party, the mistake will not be cause for reversal.

TYE, SILER & GATLIFF for appellant.

S. H. KASH, B. B. GOLDEN, STEPHENS & STEELY and W. R. LAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Reversing.

On July 31, 1913, the appellee, Neff, brought this suit in the Whitley Circuit Court against the Imperial Coal Company, to recover damages for personal injuries alleged to have been sustained by him on September 6th, 1912, on account of the negligence and carelessness of the coal company. Summons on this petition was issued against the Imperial Coal Company, and on August 18th, 1913, the sheriff made this return on the summons: "Executed on the Imperial Jellico Coal Company, August 18th, 1913, by giving a copy of same to R. F. Perkins, bookkeeper of said company."

On September 7th, 1913, the Imperial Jellico Coal Company entered its appearance for the purpose only of quashing the return on the summons, and in support of this motion filed the affidavit of R. F. Perkins, stating that the Imperial Jellico Coal Company was a corporation created by the laws of Kentucky, and that the summons against the Imperial Coal Company was executed on R. F. Perkins as the bookkeeper of the Imperial Jellico Coal Company. That Neff was working for and an employe of the Imperial Jellico Coal Company at the time he received the injury of which he complained. That there never was such a corporation as the Imperial Coal Company and the affiant was not an officer or agent of the Imperial Coal Company. "That John Morgan was on the 18th day of August, 1913, and is now the president of the Imperial Jellico Coal Company, and W. B. Wyatt was on said date and is now the vice president of the Imperial Jellico Coal Company, and J. C. Hoskins was and is now the secretary-treasurer and general manager of the Imperial Jellico Coal Company. That J. C. Hoskins then resided in Whitley County, Kentucky, and that John Morgan and W. B. Wyatt then resided and do now reside in Whitley County, Kentucky."

Thereafter, on September 21st, the court quashed the return on the summons, and a few days afterwards the plaintiff filed an amended petition in which it was averred that "by oversight and inadvertence on the part of his attorneys the full and correct name of the defendant was not stated in the petition; that the true defendant and the real and correct name of the defendant was the Imperial Jellico Coal Company, and that is the company and defendant whose acts, negligence and carelessness caused the injuries set forth in the petition, and is and was the defendant that he directed

to be sued and intended to have sued herein, and his petition herein merely omitted the word 'Jellico' from the name and style of said company;" and he asked that the petition be corrected and the case proceed as if the correct name of the defendant had been set forth in the petition.

On the same day a summons was issued against the Imperial Jellico Coal Company and executed on December 6th, 1913, on "Fred Perkins, bookkeeper of the company."

After this an answer was filed by the Imperial Jellico Coal Company in which, after controverting the allegations of the original petition, and pleading assumed risk and contributory negligence, in a separate paragraph it pleaded and relied on the one-year statute of limitation, averring that the amended petition making it a party was not filed until more than one year after the cause of action accrued.

To the paragraph pleading the statute of limitation, a demurrer was sustained. Thereupon the case went to trial, with the result that there was a verdict and judgment in favor of the appellee against the Imperial Jellico Coal Company for two thousand dollars, and on this appeal a reversal of that judgment is sought.

The first ground relied on for reversal is that the action against the Imperial Jellico Coal Company was not commenced until the amended petition was filed on November 25, 1913, more than one year after the cause of action set up in the petition accrued, and at a time when the action was barred by the statute and, therefore, the plea of limitation, to which a demurrer was sustained, presented a complete defense to the cause of action.

It will be observed that the summons on the amended petition against the Imperial Jellico Coal Company was executed on "Fred Perkins, bookkeeper," and in view of the fact that no question is raised as to the validity of this service, we may assume that Fred Perkins as the bookkeeper of the Imperial Jellico Coal Company was a proper person on whom to serve process against this company. So that the only question is, did the court commit error in sustaining a demurrer to the plea of limitation interposed as a defense?

Of course a corporation can legally have only one name, and that must be the name given to it in its articles of incorporation, and by and in that name it is author-

ized to conduct the business for which it was created. If it brings a suit, it must be brought in its designated name; and, likewise, when it is sued, it should be sued by such name. But in the case we have the suit was against the Imperial Coal Company, and the negligence charged attributed to that company, when, as a matter of fact, the plaintiff at the time he sustained the injuries complained of was an employe of the Imperial Jellico Coal Company, and his cause of action was against that company and not against the Imperial Coal Company, which was an entirely different and distinct corporation, if, indeed, there was any such corporation. It is true the summons, on the petition against the Imperial Coal Company, was executed on an authorized agent of the Imperial Jellico Coal Company, but this fact does not help the case for the plaintiff, as the Imperial Jellico Coal Company was not sued or before the court until after the amended petition was filed and summons issued thereon. But the error in omitting from the petition the word "Jellico" and styling the suit an action against the Imperial Coal Company instead of against the Imperial Jellico Coal Company, was not, in view of the admitted fact that the Imperial Jellico Coal Company was the name of the company for which the plaintiff was working when injured and the name of the company which he intended to sue, so substantial as to affect the sufficiency of the petition as the commencement of an action against the Imperial Jellico Coal company.

It is provided in section 134 of the Code that "the court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended, by adding or striking out the name of a party; or, by correcting a mistake in the name of a party, or a mistake in any other respect. * * * The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

And we think this section of the Code affords us ample authority to disregard as immaterial the error in giving the incorrect name of the corporation intended to be sued, and that when the amendment was filed correcting this error, the amendment related back to and became

a part of the original petition; Johnson v. Central R. R. Co., 74 Ga., 397; Burnham v. Stratford Co. Savings Bank, 5 N. H., 446; Lane v. Seaboard R. R. Co., 5 N. C., 25; Dixon v. Melton, 137 Ky., 689; Teets v. Snider, Heading Mfg. Co., 120 Ky., 653.

In the case of Geneva Cooperage Company v. Brown, 124 Ky., 16, the Geneva Cooperage Co. was sued as a corporation when in fact it was a partnership, and it was held that the commencement of the action against the corporation was not the commencement of an action against the individual owners so as to suspend the running of the statute of limitation against them. A like conclusion was reached under similar facts in the case of Leatherman v. Times Co., 88 Ky., 291. But in each of these cases the amendment tendered after the statute of limitation had run against the original defendant was a substantial departure from the cause of action set up in the original petition. In each case the suit was against a corporation, while the amendment undertook to commence an action against individuals. In the case we have, the suit was against a corporation, and the only error committed consisted in incorrectly designating the name of the corporation which was the real defendant intended to be and that was, in truth, sued.

The instructions are also complained of, but we think they submitted with substantial fairness the issues made by the pleadings and supported by the evidence.

It is complained that the damages are excessive, and we think this ground for reversal is well founded. The appellee received a shock by coming in contact with an electric wire carrying 250 volts. The wire had been attached to a wooden post, but the post had rotted, letting the wire sag, so that when the appellee went to turn a switch, the wire struck his forehead and knocked him down; but in a little while he was able to go back to his work, which was not heavy.

The appellee testified that the mine was idle the day following the accident, but he worked the two succeeding days, and then quit and went home, where he was confined to his bed about three weeks; that the muscles in one of his hands were drawn so that he could not straighten his fingers; that he also suffered with pains in his head and neck; that he had lost a little flesh; was also afflicted with nervousness and the nails on his fingers and toes came off.

A number of witnesses, whose statements were not contradicted, testified for the coal company, and said that if a person came in contact, in the manner appellee did, with a wire carrying 250 volts, it might stun him for a little while and knock him down, but would not leave any after bad effects. The three doctors who attended appellee when he was confined to his bed for some three weeks after the accident, and who saw him after this when he was going about, said that he had malaria and rheumatism and, in effect, that the injuries of which he complained were not attributable to the shock he received, but to other causes. No witness was introduced by appellee who said that an electric shock such as he sustained would produce the injuries, or any of them, he was suffering or had suffered with.

Under these circumstances, we think the verdict grossly excessive. If the nervous and physical conditions testified to by appellee were attributable directly to the electric shock, the verdict would not be excessive, but the evidence fails to connect these conditions with the shock.

The judgment is reversed, with directions for a new trial.